IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KENNETH SORENSON, # 408-282 | * | |
| Plaintiff, | * | |
| v | * | Civil Action No. PWG-15-1653 |
| MARY STEVANUS | * | |
| Defendant. | * | |

MEMORANDUM OPINION

On June 5, 2015, Kenneth Sorenson, an inmate at the Maryland Correctional Institution in Hagerstown, Maryland (MCI-H), filed this Complaint for a temporary restraining order, preliminary and permanent injunctive relief,[1] and $100,000 damages against Mary Stevanus, a librarian at MCI-H. Sorenson, who is self-represented, also requests leave to proceed in forma pauperis and appointment of counsel. Sorenson will be granted leave to proceed in forma pauperis for the purpose of preliminary review of the Complaint.

Sorenson claims that from March 12, 2015 until May 28, 2015, Mary Stevanus "led a campaign of harassment" and subjected him cruel and unusual punishment in violation of his rights under the First, Fifth, Eighth and Fourteenth Amendments, by "deliberately ignoring" an order of this Court requiring him to amend his complaint in *Sorenson v. John Doe, et al.*, Civil

---

[1] Sorenson asks for a preliminary and permanent injunction to : 1) compel the hiring of a library worker to make copies for one full hour during the time prisoners on protective custody are in the law library; 2) to increase the time for protective custody inmates to visit the library from twice monthly to once each week; 3) to stop the "campaign of harassment" against Sorenson by refusing to make him his legal copies and cause him distress; 4) to compel Stevanus to act with patience and courtesy and to stop "baiting" him; and 5) to compel Stevanus to seek counseling for her conduct toward Sorenson.

Action No. PWG-15-1198,[2] by blocking Sorenson's access to the law library. (ECF 1, p. 4).[3] Sorenson alleges Defendant's actions and statements have caused him to experience severe anxiety and elevated his blood pressure.

## FACTUAL ALLEGATIONS

The gravamen of Sorenson's verified complaint, which is some forty-nine pages long and supported by numerous exhibits, is summarized as follows. On March 12, 2015, Sorenson was last on line at 8 a.m. in the library to have photocopies made. Sorenson, who is in protective custody, explains that protective custody tier inmates leave the library at 8:20 a.m. When presented with the papers for photocopying, Stevanus "grabbed" them from Sorenson. She complained the papers were of various sizes and stated, "I don't have time for this, these arnt [sic] going in the copier." (ECF 1, pp. 10–11). Stevanus proceeded to copy some 115 pages, but did not finish copying them all. (ECF 1, pp. 10, 11).

On March 19, 2015, Sorenson returned to the library with more papers for photocopying. Sorenson says that he explained to Stevanus that he needed copies to complete administrative exhaustion of his claim. Stevanus explained that the copy machine was broken, and a second copy machine was for emergency use only.[4] Sorenson avers that Stevanus replied, "[u]nless you have something from the court . . . I can't help you." *Id.* at 13. Sorenson started shaking and

---

[2] On May 8, 2015, I granted twenty eight days to supplement the Complaint and on June 3, 2015, I granted him an additional extension until June 30, 2015 to supplement Civil Action No. PWG-15-1198 to explain with particularity how Defendants acted to violate his rights under federal law. I did not direct Sorenson to provide exhibits or cite case law with his supplement to the Complaint, nor were exhibits or case citations necessary. Sorenson's supplement is dated June 1, 2015, and was received for filing on June 5, 2015. The supplement includes some 311 pages of photocopied material as exhibits and attachments.

[3] Sorenson also avers he was denied requests for ARP and Appeal Forms from tier representatives.

[4] It is unclear whether these exhibits were for Sorenson's earlier filed case in this court or to enable him to administratively exhaust his claims.

2

trembling, felt dizzy, and had to sit. Five minutes later, Sorenson stood and told Stevanus that she was blocking his access to the courts. *Id.*

Stevanus informed Stevanus that his library pass was cancelled on March 26, 2015, because he was too loud. *Id.* at 14. On April 2, 2015, Stevanus allegedly refused to make copies for Sorenson, telling him that the copy machine was broken. *Id.* She allegedly cancelled Sorenson's library pass again on April 9 and 23 and on May 7, 2015. *Id.* at 14–16.

On May 14, 2015, Sorenson brought some 75 pages to the library for copying. The copier had been repaired, and Sorenson told Stevanus that it was "urgent that he get these copies made for his pending suit." *Id.* at 19. Stevanus informed him that "unless you have something from the court, I can't help you." Sorenson "begged" her for the copies. Stevanus took thirty pages from him and started to make two copies of each for Sorenson. The copier then ran out of paper, and once replenished became stuck. Stavenus stammered "I can't take this!!" and left the room. Another library worker, "June," took over the copying, and Sorenson told her to stop making copies. *Id.* at 22. According to Sorenson, Stevanus then told him: "This has got to stop! [E]very week you do this, its [*sic*] the same thing every week. [Y]our [*sic*] not being considerate of other people." Stevanus continued "You cannot keep doing this! [I]n all my ten years I have never had anyone act like you!! You can't keep 'controlling' everything for the hour you are down here." *Id.* Stevanus told Sorenson to ask his case manager to make the copies.

On May 18, 2015, Ms. Marshall, a case manager, made copies for Sorenson. Sorenson was told that the library is responsible for making legal copies, and she could no longer make copies for him of legal documents. *Id.* at 24

On May 21, 2015, Sorenson went to the library for LASI[5] cases and was told by the library assistant that they were not there. *Id.* at 26. He requested several other items and received the same answer. *Id.* Following a verbal back-and-forth between Sorenson and the assistant as well as between Sorenson and Stevanus, Sorenson asked, "can you please make me copies," and Stevanus agreed to do so. *Id.* at 27–33. However, Sorenson alleges that Stevanus "shoved" too many pages in the copy machine and it became stuck. *Id.* at 33. Sorenson alleges that Stevanus is hiding his LASI cases with retaliatory animus. *Id.* at 37.

On May 28, 2015, Stevanus canceled Sorenson's library pass. Sorenson avers Stevanus did this notwithstanding that he had a due date approaching and required access to the library to prepare his court papers.[6]

## DISCUSSION

This complaint is filed under 28 U.S.C. §§ 1915, which permits an indigent litigant to commence an action in federal court without prepaying the filing fee. To guard against possible abuses of this privilege, the *in forma pauperis* statute requires a court to dismiss any claim that fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). In this context, this Court is mindful of its obligation to liberally construe the pleadings of pro se litigants such as Sorenson. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In evaluating a pro se complaint, a plaintiff's allegations are assumed to be true. *Id.* at 93 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). Nonetheless, liberal construction does not mean that a court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990); *see*

---

[5] The Court takes notice that "LASI" refers to the Legal Assistance to State Institutions, a system of legal research available to inmates.

[6] Sorenson's assertion that LASI material was hidden from him is contradicted by his reference to numerous legal citations in his supplement to Civil Action PWG-15-1198.

*also Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (stating a district court may not "conjure up questions never squarely presented").

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of a federal constitutional right or a right secured by federal law. *See Baker v. McCollan*, 443 U.S. 137, 140 (1979). Section 1983 establishes a cause of action against any "person" who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. However, § 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker*, 443 U.S. at 144 n.3).

Sorenson's allegations are insufficient to state a claim of constitutional dimension. Prisoners have a constitutionally protected right of access to the courts. *See Bounds v. Harris*, 430 U.S. 817, 821 (1977). The right of access to the courts, however, is the right to bring to court a grievance, and violation of that right occurs only when an inmate is "hindered [in] his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 355 (1996). To present a claim for denial of access to the courts, an inmate cannot rely on conclusory allegations; he must identify with specificity an actual injury resulting from official conduct. *See Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996). "Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*, 112 F.3d 773, 776 (4th Cir. 1997) (quoting *Lewis*, 518 U.S. at 355). "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of

law from undertaking tasks assigned to the political branches." *Id.* at 349. Actual injury requires that the inmate demonstrate that his "nonfrivolous" post-conviction or civil rights legal claim has been "frustrated" or "impeded." *Lewis*, 518 U.S. at 353–55.

In this case, Sorenson fails to allege actual injury. This Court notes that his supplemental complaint filed in Civil Action No. PWG-15-1198 is replete with lengthy exhibits and attachments, thus belying his assertions that he was harmed by being denied the opportunity to photocopy legal materials. Importantly, he does not allege that the supplement filed is deficient for lack of a particular exhibit.[7] Sorenson's concerns about photocopying, the availability of library visits, and his perception of the treatment accorded him by Stevanus exhibit demonstrate his frustration, but fail to substantiate his conclusory assertions of physical harm (purported dizziness, spikes in blood pressure) and actual legal injury. In sum, they are insufficient to sustain a denial of access to the courts. Thus, Sorenson fails to set forth a cognizable claim under the First Amendment for denial of access to the courts.[8]

To the extent Sorenson avers his rights under the Eighth Amendment were abridged by Stevanus, the allegations fall far short of showing cruel and unusual punishment. Complaints about jail conditions fall within the scope of the "Cruel and Unusual Punishments" provision in the Eighth Amendment, which prohibits conditions which involve the wanton and unnecessary infliction of pain and result in the serious deprivation of basic human needs. *Rhodes v. Chapman*,

---

[7] Civil Action PWG-15-1198 is proceeding and an order regarding service on Defendants has been issued.

[8] To the extent Sorenson complains he has not received all ARP and administrative appeal forms he has requested, his claims of possible future legal injury in this court are speculative. A prisoner has no constitutional entitlement to participate in a prison grievance process. *See Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). The exhaustion requirement "require[s] prisoners to pursue administrative grievances until they receive a final denial of their claims, appealing through all available stages in the administrative process." *Chase v. Peay*, 286 F.Supp.2d 523, 530 (D. Md. 2003). It does not, however, require the exhaustion of administrative processes unavailable to a prisoner. "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Blake v. Ross*, _F.3d _, 2015 WL 2405241, at *3 (4th Cir. 2015) (quoting *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008)).

452 U.S. 337, 346–47 (1981). An Eighth Amendment claim is comprised of two elements: an objective element, which means that a plaintiff has alleged a sufficiently serious deprivation, and a subjective element, which requires that he demonstrate that a defendant possessed a state of mind of deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A prison condition is sufficiently serious so as to satisfy the first component of an Eighth Amendment claim if it denies a plaintiff "the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 47–48. However, only extreme deprivations can be characterized as punishment prohibited by the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992). When prison conditions are concerned, an extreme deprivation is one "so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 36 (1993) (emphasis in original). Denial of a library pass or restrictions on photocopying documents as alleged here, absent a showing of injury, clearly does not rise to the magnitude of an Eighth Amendment claim. For these reasons, this case will be dismissed for failure to state a claim.[9]

Moreover, a party seeking a preliminary injunction or temporary restraining order must establish all four of the following elements: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *The Real Truth About Obama, Inc. v. Federal Election*

---

[9] Sorenson is cautioned that under 28 U.S.C. § 1915(g) a prisoner litigant will not be granted *in forma pauperis* status if he has "on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." If he files additional cases of this nature, he risks assignment of "strikes" under this provision.

*Comm'n*, 575 F.3d 342, 346–47 (4th Cir. 2009). A preliminary injunction is an extraordinary and drastic remedy. *See Munaf v. Geren*, 553 U.S. 674, 689–90 (2008). In the prison context, courts should grant preliminary injunctive relief respecting the management of correctional institutions only under exceptional and compelling circumstances. *See Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994). A plaintiff must show that the irreparable harm he faces in the absence of relief is "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Medical Group*, 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted).

Sorenson fails to show he is facing irreparable harm in the absence of some unspecified injunctive relief, or that the harm is not "remote nor speculative, but actual and imminent." *Direx*, 952 F.2d at 812. For reasons discussed above, Sorenson does not show that he is likely to suffer irreparable harm in the absence of preliminary relief, that an injunction would serve the public interest, or that the equities tip in his favor. Therefore, his request for preliminary or permanent injunctive will be denied and his Motion for Appointment of Counsel (ECF 4) will be dismissed as moot.

## CONCLUSION

For these reasons, Sorenson's Motion to Proceed in Forma Pauperis will be granted for the purpose of preliminary review and this case will be dismissed for failure to state a claim. The Motion for Appointment of counsel will be dismissed as moot. A separate Order follows.

06/26/15
Date

Paul W. Grimm
United States District Judge